HON. F. J. MOSES, CHIEF JUSTICE.
HON. A. J. WILLARD, ASSOCIATE JUSTICE.
HON. J. J. WRIGHT, ASSOCIATE JUSTICE.

---

GRIFFIN, BRO. & CO. *vs.* E. T. REMBERT AND OTHERS.

Defendants signed a letter, addressed to F., as follows: "As you request, we are willing to help you in the purchase of a stock of goods. We will, therefore, guarantee the payment of any bills which you may make, under this letter of credit, in Baltimore, not exceeding in the whole fifteen hundred dollars:" *Held,* That any party advancing goods to F., upon the faith of the promise contained in the letter, could maintain an action thereon against the defendants as guarantors.

A party may maintain an action on a written agreement, within the fourth Section of the Statute of Frauds, though his name does not appear therein. The fact that he became a party to the agreement may be shown by parol.

One who gives a guaranty for future advances to be made is entitled to notice of the acceptance of the guaranty; but the notice need not be express, nor is it necessary that it should be given by the creditor. It may be inferred from circumstances.

BEFORE GREEN, J., AT SUMTER, OCTOBER TERM, 1870.

This was an action of *assumpsit* against E. T. Rembert, D. A. Foxworth, F. Joye and I. W. Bradley, defendants, upon the letter of guaranty hereinafter mentioned. Rembert and Bradley were the only defendants who appeared and pleaded to the action.

The appeal was heard upon a case containing exceptions, which is as follows:

"The plaintiffs then, to maintain the issues on their part, called as a witness Francis Joye, one of the defendants, who testified that the signatures of the defendants to a certain letter were genuine.

"The letter was then read in evidence, and is as follows:

SUMTER, S. C., October 15, 1866.

"MR. FRANCIS E. JOYE—*Dear Sir:* As you request, we are willing to help you in the purchase of a stock of goods. We will, therefore, guarantee the payment of any bills which you may make, under this letter of credit, in Baltimore, not exceeding in the whole amount fifteen hundred dollars.

"E. T. REMBERT,
"D. A. FOXWORTH,
"F. JOYE,
"I. W. BRADLEY."

"The same witness further testified that, under a power of attorney from F. E. Joye, he went to Baltimore, taking with him the letter, and purchased there, in November, 1866, for his principal, from six different firms, bills of goods, amounting, in the whole, to something less than $1,500. The plaintiffs' was one of the firms. Their bill amounted to $341.70. The goods were shipped to and received by F. E. Joye. The purchases were made on a credit of four months. Witness exhibited the letter from defendants to all the firms, and the purchases were made under it.

"The plaintiffs' bill was identified by the witness, and received in evidence. It is dated November 12, 1866, and headed 'F. E. Joye to Griffin, Bro. & Co., Dr.'

"The same and other witnesses for plaintiffs testified that, in December, 1866, the defendants, Rembert and Bradley, learned from F. Joye and F. E. Joye that the latter had purchased goods in Baltimore. They were also allowed to testify, against the objections of Rembert and Bradley, that some time after the goods were purchased, in February, 1867, they, Rembert and Bradley, received notice that F. E. Joye was not conducting his business properly; and, thereupon, they applied to him to turn over what remained of his goods and effects to them—saying they were the only responsible ones of the parties, and that they would pay the debts; that, after some hesitation, he consented, and turned over to Bradley, for himself and Rembert, a little money and some goods and credits,

the whole amounting, as the witness, F. Joye, thought, to about $1,400.

"The plaintiffs here rested, and the defendants, Rembert and Bradley, by their counsel, moved for a non-suit, on the grounds:

"I. That the letter read in evidence did not sustain the allegations of the declaration—that, according to its legal construction, it was not a guaranty, but a mere promise to F. E. Joye himself that the defendants would guaranty such bills as he might purchase, &c.—that such promise was void for want of consideration, and no action could be maintained upon it by any one.

"II. That a guarantee is an agreement, within the fourth Section of the Statute of Frauds; that no party can maintain an action upon any agreement, within that Section, unless he be named in it; and as the plaintiffs are not named in the letter they can maintain no action upon it—the name being an essential part of the agreement, which parol evidence is inadmissible to supply.

"III. That, assuming the evidence of an agreement to guaranty to be otherwise sufficient, still the proof was fatally defective, for plaintiffs had not shown, nor offered evidence tending to show, that they had given notice to Rembert and Bradley, or either of them, that they had accepted the guaranty, and such notice was necessary.

"The Court denied the non-suit, and the defendants, Rembert and Bradley, by their counsel, excepted.

"The defendants offered no evidence, and the cause was summed up by the respective counsel.

"The Court charged the jury:

"I. That it is not necessary that a party should be named in an agreement, within the fourth Section of the Statute of Frauds, to enable him to maintain an action thereon.

"II. That the construction of the letter was for the jury, and if they should find, first, that it was intended as a guaranty, and not as a mere promise to F. E. Joye, himself, to guaranty; second, that the plaintiffs' bill was made in Baltimore; and, third, that defendants had reasonable information that the goods had been purchased under the guaranty; then they should find for the plaintiffs.

"III. That notice of acceptance was necessary in order to bind the defendants, but notice might be presumed from the fact that the defendants, Bradley and Rembert, took the goods out of the possession of F. E. Joye on the ground that they were the only solvent parties who had signed the letter of credit.

"To the charge in each and all the points stated, the defendants, Rembert and Bradley, by their counsel, excepted.

"The jury found for the plaintiffs $341.70, the amount of their bill."

On the case containing exceptions the defendants, Rembert and Bradley, on October, 1870, moved for a new trial. The motion was denied, and on 22d October, 1870, the plaintiffs entered judgment on the verdict.

The defendants, Rembert and Bradley, appealed to this Court, and now moved :

1. That a non-suit be granted on the grounds, or some one of the grounds, taken for a non-suit in the Court below.

And, failing in that motion, then,

2. That a new trial be granted on the ground that the Judge below erred in his charge to the jury on all, or some, or one of the points to which exceptions were taken at the trial.

*J. S. G. Richardson,* for appellants.

*Blanding;* contra.

May 18, 1871. The opinion of the Court was delivered by

MOSES, C. J. The action seeks to charge the defendants on the guaranty of which the following is a copy :

"SUMTER, S. C., October 15, 1866.

MR. FRANCIS E. JOYE—*Dear Sir :* As you request, we are willing to help you in the purchase of a stock of goods. We will, therefore, guarantee the payment of any bills which you may make under this letter of credit in Baltimore, not exceeding, in the whole amount, fifteen hundred dollars." Signed by the defendants.

The first ground on which the non-suit was asked, was "that the letter read in evidence, according to its legal construction, was not a guarantee, but a mere promise to F. E. Joye, himself, that the defendants would guaranty such bills as he might purchase, &c.; that such promise was void for want of consideration, and no action could be maintained upon it by any one."

The letter is to be construed as a whole, and effect is to be given to it by looking to the several parts which it contains. It is addressed to the party to be benefitted, in answer to some request for aid in the purchase of a stock of goods.

A direct obligation is assumed to guaranty the payment of any bills contracted in Baltimore, not to exceed a certain amount, and

those bills were to be made "under" the writing which the signers call "a letter of credit."

If A were to address a letter to B, saying, I will guarantee the payment of any bills which C makes with you for goods to be sold him, we apprehend but little doubt would exist that a collateral liability would attach.

The introduction of the word "therefore," in the paper before us, can, in no way, qualify, much less defeat, the legitimate consequence which must result from the assumption which was intended by the terms employed by the signers.

The word was used to designate the mode by which the request of F. E. Joye for assistance was answered, and the "help" was extended by their guaranty of his purchases in Baltimore.

"No special words or form are necessary to constitute a guaranty. If the parties clearly manifest that intention, it is.sufficient."—2 Parsons on Contracts, 5.

If the paper only amounts to an overture, notice of its acceptance, with the assent of the signer, converts it into a guaranty.

Regarding it as an absolute guaranty, we are then to consider whether, in the language of the next ground taken, "the plaintiffs can sustain their action as on an agreement, within the fourth Section of the Statute of Frauds, when they are not named in it, the name being an essential part of the agreement, which parol evidence is inadmissible to supply." The 4th Section of the Statute of Frauds provides that "no action shall be brought whereby to charge the defendant upon any special promise to answer for the debt, default, or miscarriage of another person, unless the agreement upon which such action shall be brought, or some memorandum, or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized."

This proposition, on the part of the appellants, raises a question which we supposed had been long settled in this State. Though, at one time, our Courts adopted the rule established in *Wain* vs. *Walters*, 5 East, 10, later decisions, most of which are referred to in *Fyler, adm'r*, vs. *Givens*, 3 Hill, 48, reversed it, to the extent of holding that it was not necessary that the consideration of the promise must be stated in the note or memorandum.

The argument used here to convince the Court that the guaranty is void because "the plaintiffs are not named in the letter," is of the same character as that which enforced the necessity of the statement of the consideration in the instrument itself. It proceeded upon the

ground that the word "agreement," as used in the statute, was employed in a technical sense, that the consideration being an essential and a vital element in an agreement, and as the statute requires the latter to be in writing, all that necessarily form component parts of it must be stated. So here it is contended, that an agreement implies the assent of two or more minds, and, therefore, the contracting parties should be named. It is not necessary to follow the argument by which the Courts of this, and some other of the States of the Union, have felt themselves impelled to a contrary conclusion. It may be enough to say, that the statute merely requires that a memorandum or note of the agreement shall be in writing, and signed by the party to be charged therewith, or some other person by him lawfully authorized. Following the analogy of the decision made on the other question arising under the word "agreement," we hold that the statute is fulfilled if the party against whom the performance is sought has signed the letter.

The result to which we have arrived on this point is sustained by abundant authority, independent of the sound reasons which led to the decision in *Fyler* vs. *Givens*.

Mr. Fell, in his work on "Guarantees," at page      says, "But it seems very questionable whether a note or guarantee need shew upon the face of it all the contracting parties. Suppose a guarantee given in the following form : " I promise to guarantee the payment of goods furnished to A B, (signed) D C." This may be a very useful form of guarantee where a person of known reputation wishes to gain credit for another, leaving to him the choice of such person to deal with as he might find most to his advantage."

Chancellor Kent, in his 2 Commentaries, 510, says "the signing of the agreement by one party only is sufficient, provided it be the party sought to be charged. He is estopped by his signature from denying that the contract was validly executed, though the paper be not signed by the other party who sues for a performance."

In Pitman on "Principal and Surety," p. 75, it is said "the word 'agreement,' in the fourth Section of the Statute of Frauds, is satisfied if the writing states the subject-matter of the contract, the consideration, and is signed by the party to be charged, and it is not essential to the validity of the writing that it should shew mutuality."

Mr. Parsons, in his 2d volume on "Contracts," p. 9, says, "it is now quite settled that the agreement need not be signed by both parties, but only by him who is to be charged by it."

Mr. Story, in his work on "Contracts," at p. 737, says, "It is not indispensable that a guaranty should be addressed to a particular person. It may be general, as a .general letter of credit, and designated as a circulating guaranty in favor of any person who shall advance money or goods upon the faith thereof. In such a case, any person may avail himself of the security thus held out by giving notice to the guarantor, within a reasonable time, that he has accepted the guaranty, and acted upon it, and the guarantor will be bound for all advances made on the credit thereof."

In *Lawrason* vs. *Mason*, 3 Cranch, 492, the note was in the following words and figures:

"November 27, 1800.

"Mr. James McPherson—*Dear Sir:* We will become your security for 130 barrels of corn, payable in 12 months.

"LAWRASON & SMOOT."

The objection submitted in the case before us was made there. Marshall, C. J., delivering the opinion of the Court, said: "If it be said that, in such a case, the law raises the *assumpsit* from the facts, and, if the facts do not imply an *assumpsit,* no action will lay, it may be answered that, in the present case, there is an *actual assumpsit* to all the world, and any person who trusts, in consequence of that promise, has a right of action."

On the question of notice, it appears by the brief that the Circuit Judge did charge the jury " that notice of acceptance was necessary to bind the defendants, but that notice might be presumed from the fact that the defendants, Bradley and Rembert, took the goods out of the possession of F. E. Joye, on the ground that they were the only solvent parties who had signed the letter of credit."

That notice of acceptance of a guaranty for future credit must be given to the guarantor before he can be bound, is the settled law of this State, as established by various decisions.—*Sollee and Warley* vs. *Mengly*, 1 Bail., 620; *Lawton* vs. *Maner*, 9 Rich., 335; *Walker, Wardlaw* and *Burnsides* vs. *Harrison*, 11 Rich., 626.

Mr. Justice Story, in *Adams* vs. *Jones*, 12 Pet., 213, says: "It is not now an open question," in the Court whose judgment he was pronouncing.

The notice of assent need not be express. It may be implied from the circumstances of the particular transaction. The reason that notice is necessary, is that the guarantor may have the opportunity of indemnifying himself for the risk incurred by his assump-

tion. As is said by Mr. Parsons, "the principle which underlies the whole law of guaranty is, that this contract, like every other, must be known to the parties to it." If this knowledge is brought home to him who is sought to be charged, he is aware of the relation in which he stands to the party for whose benefit he became bound, and has full opportunity to protect himself, from time to time, if he considers that there is danger of a loss from the engagement into which he has entered.

No precise rule can be laid down as to the time when notice should be given of the acceptance of a guaranty which is to be prospective in its operation, or in what manner it should be given. Even without direct information from the person to whom the guaranty is addressed, circumstances might shew that the guarantor was fully advised of its acceptance; and, in such a case, the end to be obtained by express notice would be fulfilled. A time, reasonable in regard to the purpose for which it is required, is all that should be demanded.

The Circuit Judge did narrow the scope which should have been allowed the jury on this question of notice, which, he charged them, was necessary to bind the defendants, by saying that it "might be presumed from the fact that the defendants, Bradley and Rembert, took the goods out of the possession of F. E. Joye, on the ground that they were the only solvent parties who had signed the letter of credit." How far this was of prejudice to the other defendants it is not necessary to inquire, for they do not seek here to set aside the verdict. In connection with this part of the charge, we cannot pass over the evidence of the witnesses, F. Joye and D. A. Foxworth, that the appellants, in December, 1866, knew that F. E. Joye had purchased the goods in Baltimore, and, when they took from F. Joye the money and remaining stock, said "they would pay the debts." F. Joye, too, one of the guarantors, actually made the purchases under the guaranty. The whole evidence as to notice was before the jury, and we do not see enough of misdirection in the charge to justify us in setting the verdict aside.

It is ordered and adjudged that the motion be refused, and the appeal dismissed.

*Willard*, A. J., and *Wright*, A. J., concurred.